**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

TERRENCE F.,

                Plaintiff,

  v.                                                                                          3:20-CV-1304
                                                                                                                 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

STEVEN R. DOLSON, ESQ., for Plaintiff
HUGH DUN RAPPAPORT, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

**MEMORANDUM-DECISION and ORDER**

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

**I.    PROCEDURAL HISTORY**

      On March 7, 2018, plaintiff protectively filed concurrent applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"), alleging disability beginning October 15, 2016. (Administrative Transcript ("T") 66, 79, 197–213). Plaintiff's applications were denied initially on July 12, 2018. (T. 66, 79, 97–100). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Michael J. Kopicki on September 12, 2019. (T. 31–65). At the hearing, the ALJ heard testimony from plaintiff, as well as vocational expert ("VE") Jennifer

Guediri. (*Id.*). On September 30, 2019, the ALJ issued an order denying plaintiff's claim. (T. 12–24). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 28, 2020. (T. 1-3).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment

2

> which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include

3

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was born on May 19, 1977, making him 41 years old as of the date of the administrative hearing. (T. 36). He had a GED, could drive a car, and lived in an apartment with his fiancée and nine-month-old child. (T. 35–36, 58–59). Plaintiff was most recently employed in the fast food service industry, and also had experience driving forklift and working in a meat packing plant. (T. 37–38).

Plaintiff testified that he was no longer able to work due to the pain and swelling in his legs, particularly his right ankle and knee. (T. 40–41). He took hydrocodone for pain, used ice packs and elevated his legs as needed. (T. 41). The hydrocodone did not alleviate all of his pain. (*Id.*). Plaintiff was prescribed braces for both knees, and wore them whenever he was out of the house. (T. 44). Plaintiff also testified that he used a

cane for "extensive walking," which he described as more than a block. (43–44, 56–57). He could walk "a couple" of blocks with his cane. (57). He also used his cane when he first got up in the morning, because his ankle was stiff. (T. 44). Plaintiff was pursuing ankle replacement surgery. (T. 45). He testified he could not perform a job that required sitting for the majority of the day, because he cannot sit still or focus. (T. 48). He also attributed his inability to work a sedentary job to his ankle swelling and stiffness. (*Id.*).

Plaintiff provided child care for his infant child during the day while his fiancée worked, with the help of his 12-year old daughter who lived nearby. (T. 43, 50). When grocery shopping, plaintiff used a motorized cart to get around the store. (T. 47–48).

## IV.   THE ALJ'S DECISION

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since his alleged onset date. (T. 17). At step two of the sequential evaluation, the ALJ found that plaintiff's right ankle arthrosis status-post fusion and revision surgery was a severe impairment. (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. (T. 19).

At step four, the ALJ found that plaintiff had the RFC for sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except he could occasionally lift ten pounds and frequently lift less than ten pounds. (T. 19). The ALJ further found that plaintiff could stand and/or walk with normal breaks for a total of two hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday with

5

normal breaks. (*Id.*). The ALJ found that plaintiff could no more than occasionally climb ramps, stairs or stoops; never climb ladders, ropes or scaffolds; and occasionally crawl. (*Id.*). Last, the ALJ found that plaintiff should avoid even moderate exposure to hazards such as dangerous machinery and unprotected heights. (*Id.*).

The ALJ found that plaintiff was unable to perform any past relevant work. (T. 22). However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 23–24). Thus, the ALJ found that plaintiff was not disabled. (T. 24).

## V.     ISSUES IN CONTENTION

Plaintiff contends that the ALJ committed reversible error by failing to account for the impact of a cane on plaintiff's ability to perform work-related activities. (Plaintiff's Brief ("Pl.'s Br.") at 5–9) (Dkt. No. 11). The Commissioner contends that the ALJ permissibly omitted a cane requirement from his RFC determination. (Defendant's Brief ("Def.'s Br.") at 2–10) (Dkt. No. 13). For the following reasons, the court agrees that the ALJ's failure to address whether plaintiff's cane was a medical necessity was not harmless error, and remand is warranted in order for the ALJ to determine whether a cane is medically necessary and, if it is, incorporate plaintiff's use of a cane into the RFC.

## DISCUSSION

### VI. MEDICAL NECESSITY OF PLAINTIFF'S CANE

#### A. Legal Standards

For a cane to be medically necessary, "there must be medical documentation establishing the need for [the cane] to aid in walking or standing[ ] and describing the circumstances for which it is needed." *Charles F. v. Comm'r of Soc. Sec.*, No. 19-CV-1664, 2021 WL 963585, at *4 (W.D.N.Y. Mar. 15, 2021) (citing SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)).  A cane need not be prescribed to be considered medically necessary, but there must be specific medical documentation establishing the need for it and the circumstances surrounding that need. *Hoke v. Colvin*, No. 1:14-CV-663, 2015 WL 3901807, at *14 (N.D.N.Y. June 25, 2015).  The plaintiff has the burden to establish medical necessity.  *See Wilson v. Comm'r of Soc. Sec.*, No. 6:13-CV-643 (GLS/ESH), 2014 WL 4826757, at *11 (N.D.N.Y. Sept. 29, 2014).  A physician's observation that a patient used a cane or had an unsteady gait does not satisfy this burden. *See Hoke v. Colvin*, 2015 WL 3901807, at *14. "[W]hen there is medical documentation about a cane in the record, an ALJ's failure to determine whether the cane is medically necessary or to incorporate the use of a cane into the RFC is legal error." *Charles F. v. Comm'r of Soc. Sec.*, 2021 WL 963585, at *4.

#### B. Application

Plaintiff argues that despite the evidence of record, the ALJ failed to consider whether plaintiff's cane was medically necessary, and, if so, incorporate any additional

7

limitations posed by this necessity into plaintiff's residual functional capacity. In his decision, the ALJ's discussion of plaintiff's cane was limited to (1) referencing plaintiff's hearing testimony that he used a cane to walk (T. 19, 20), and (2) representing that he considered plaintiff's "loss of use of his right hand when he has to use his cane to ambulate" in the residual functional capacity (T. 21). At no point in the decision did the ALJ assess whether a cane was medically necessary or incorporate any relevant limitations into his RFC determination, much less discuss the evidence of record concerning plaintiff's purported necessity.

To this end, the three medical opinions of record each reference plaintiff's use of a cane. In her June 26, 2018 consultative examination report, Justine Magurno, M.D. opined in conjunction with her physical examination of plaintiff that, "in [her] opinion, [his] cane is medically necessary for ambulation." (T. 442). On June 25, 2019, plaintiff's primary care provider, nurse practitioner ("NP") Martha Smith, also opined via check-box form that "while engaging in occasional standing/walking," plaintiff must "use a cane or other assistive device." (T. 495).

The ALJ did not specifically discuss Dr. Magurno and NP Smith's opinions relative to plaintiff's use of a cane, however he generally found these opinions less persuasive than that of state agency medical consultant A. Vinluan, M.D. (T. 21–22). On July 10, 2018, in conjunction with his functional capacity analysis at the initial level, Dr. Vinluan noted that plaintiff's "primary [doctor] prescribed [a] cane." (T. 89). He further noted that plaintiff "uses the cane when he gets up in the morning . . . [and] all the time when he goes out for stability and balance." (*Id.*). Dr. Vinluan further

8

recognized Dr. Magurno's opinion that the "cane is necessary." (T. 88). Notwithstanding these observations, Dr. Vinluan also stated that plaintiff's "TS[1] does not support assistive device." (T. 88). Dr. Vinluan opined that plaintiff could perform "sedentary work with occasional climbing, bending, [and] overhead reaching." (T. 89). His opinion as to plaintiff's functional capacity does not include a cane. (*Id.*). The ALJ did not address Dr. Vinluan's references to plaintiff's cane, but generally found his opinion to be "persuasive." (T. 21).

In addition to the aforementioned medical opinions, there is other evidence of record suggesting that plaintiff required a cane to ambulate, at least to some extent. Plaintiff consistently reported right lower extremity pain to his primary care provider, who noted swelling, limited range of motion, diminished strength and tenderness in the right lower extremity. (T. 419, 423, 424, 497, 499). Upon examination, Dr. Magurno observed plaintiff to have an antalgic gait, which decreased with the use of a cane. (T. 442). She stated that plaintiff's range of motion in his right ankle was "not applicable," due to having been fused at zero degrees. (T. 443). At the administrative hearing, plaintiff testified that he could not walk for more than a block without his cane. (T. 43–44, 56–57). This evidence is consistent with Dr. Magurno and NP Smith's opinions, but was not discussed by the ALJ in the context of medically necessary assistive devices.

Notwithstanding the considerable evidence of record suggesting that plaintiff required the use of a cane for ambulation, the ALJ failed to meaningfully address

---

[1] Presumably, TS stands for "treating source."

9

whether the cane was medically necessary. "Because the ALJ did not make an explicit finding about [plaintiff's] use of a cane, this Court does not know whether the ALJ failed to consider the evidence about a cane; found that a cane was not medically necessary; found that a cane was medically necessary but did not impact plaintiff's RFC; or reached some other conclusion." *Charles F. v. Comm'r of Soc. Sec.*, 2021 WL 963585, at *4.

The only medical opinion which may have, arguably, been interpreted to suggest that plaintiff did not require the use of a cane was that of Dr. Vinluan. However, at minimum Dr. Vinluan's opinion is ambiguous and internally inconsistent as to plaintiff's need for a cane.[2] Without the benefit of any further discussion by the ALJ as to how he evaluated Dr. Vinluan's opinion in this regard, it does not adequately support the decision to omit a cane from the RFC determination. Further perplexing is the ALJ's representation that he considered claimant's loss of use in his right hand when he has to use his cane to ambulate, where the RFC does not include plaintiff's use of a cane, or any limitations on the residual functional capacity of his right hand.

In a *post hoc* rationalization, the Commissioner argues the court should accept that the ALJ impliedly interpreted Dr. Vinluan's opinion to conclude that plaintiff did not require a cane, and that the ALJ properly relied on said opinion to craft an RFC assessment that omitted a cane requirement. However, this reasoning is not apparent from the ALJ's decision, nor is it sufficient to bolster the ALJ's determination. *See*

---

[2]In particular, Dr. Vinluan made conflicting representations that plaintiff's treating source did not support the use of a cane, while also stating that plaintiff's primary doctor prescribed a cane. (T. 88–89).

*Pickett v. Colvin*, No. 3:13-CV-1295, 2015 WL 1321017, at *3 (D. Conn. Mar. 23, 2015) ("[A] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action . . . . " (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *Gregory F. v. Comm'r of Soc. Sec.*, No. 19-CV-00481, 2020 WL 7166738, at *5 (W.D.N.Y. Dec. 7, 2020) ("It is a foundational principle of administrative law that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

Moreover, the evidence that the Commissioner suggests Dr. Vinluan relied on in purportedly concluding that plaintiff did not require a cane for ambulation is not particularly compelling. For example, the Commissioner contends that Dr. Vinluan must have relied on a July 2015 treatment note, wherein plaintiff's former primary care physician states in the "Comments" section that plaintiff "has seen [orthopedics] and [was] told he does not need [physical therapy] or cane or walker." (T. 346). Not only was this secondhand comment made more than a year before plaintiff's alleged disability onset date, but it is contradicted by other evidence of record which suggests that since 2015 plaintiff experienced increasing pain and physical limitations, was referred to a pain clinic, and commenced using a cane for assistance with ambulation at the direction of his physician.

Further absent from the record is any evidence that plaintiff could still perform a significant number of jobs in the national economy, including those identified by the vocational expert, if a limitation for the use of a cane while walking or standing when

11

performing sedentary work *was* included in the RFC.  *See* SSR 96-9p (noting that an individual who requires the use of a hand-held assistive device for aid in walking or standing because of an impairment impacting one lower extremity or to reduce pain "*may* still have the ability to make an adjustment to sedentary work that exists in significant numbers," but that, in such a situation, "it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work") (emphasis added).  To the extent the vocational expert did not address whether the jobs he identified could be performed by someone who needed a cane to walk or balance, this court cannot conclude that the ALJ's error was harmless.  *See Charles F. v. Comm'r of Soc. Sec.*, 2021 WL 963585, at *4 (ALJ's failure to explore whether the jobs addressed by the vocational expert could be performed by someone who needed a cane was not harmless error).

Accordingly, the court concludes that the ALJ committed legal error by failing to determine whether a cane is medically necessary, despite the medical documentation of record establishing its need.  *See Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. Sept. 6, 2018) ("Here, there are multiple references in the record as to plaintiff's use of a cane or walker . . . .  Despite this, the ALJ never specifically explained why he did not include the use of the cane in his RFC determination. This was error.").  Because the decision is insufficiently clear to allow for meaningful review of whether the ALJ's omission of any use of a cane from the RFC finding is supported by substantial evidence, remand is warranted.  On remand, the ALJ must consider whether a cane is medically necessary and, if so, incorporate it

and any related restrictions into the RFC.  If warranted, the ALJ should consult a vocational resource as to what extent any necessary assistive device will affect plaintiff's ability to make an adjustment to jobs that exist in significant numbers.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: April 21, 2022

Andrew T. Baxter
U.S. Magistrate Judge